

**LORI S. SIMPSON**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | * | |
|    Brian Arthur McCormick | * | Case No. 19-16414-LSS |
|       Debtor. | * | Chapter 7 |
| | * | |
| * * * * * * * | * * * * * * | |
| Saad Mohammed Fehad Buzwair Al Dosari, | * | |
|       Plaintiff, | * | |
| | * | |
| v. | * | Adv. No. 19-00313 |
| | * | |
| Brian Arthur McCormick, | * | |
|       Defendant. | * | |
| | * | |

### MEMORANDUM OPINION

Before the Court are Plaintiff's Motion for Judgment on the Pleadings [Dkt. No. 17] (the "Motion"), the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings [Dkt. No. 18], Defendant's Opposition to Plaintiff's Motion for Judgment on the Pleadings [Dkt. No. 27], Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Judgment on the Pleadings [Dkt. No. 37]; Defendant's Rebuttal to Plaintiff's Reply to Debtor's

Opposition to Plaintiff's Motion for Judgment on the Pleadings [Dkt. No. 38], and Plaintiff's Response to Defendant's Rebuttal [Dkt. No. 39]. For the reasons that follow, the Court finds and concludes that the Motion for Judgment on the Pleadings should be denied.

This Court has jurisdiction to hear this matter, pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a). The following constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52, made applicable to this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. To the extent appropriate, the following findings of fact shall be deemed conclusions of law and *vice versa*.

## I. BACKGROUND.

Defendant was a real estate developer involved in a large construction project in Qatar. Defendant solicited and obtained a large investment from Plaintiff. Thereafter, Defendant's business ventures collapsed.

On August 30, 2012, a group of Defendant's creditors filed an Involuntary Chapter 7 Petition against Defendant in the United States Bankruptcy Court for the District of Maryland (the "2012 Bankruptcy"). *See* Case No. 12-25888, Dkt. No. 1. On May 22, 2013, Plaintiff filed a proof of claim in the 2012 Bankruptcy asserting a claim of $11,064,437.58. Eight days later, Plaintiff filed an adversary complaint against Defendant (the "2013 Adversary"). *See* Adversary Case No. 13-00325, Dkt. No. 1. After Defendant did not file a timely answer to the adversary complaint, Plaintiff sought and obtained a Clerk's Entry of Default. *See* Adversary Case No. 13-00325, Dkt. Nos. 6 & 7. Soon thereafter, Defendant filed an Answer and Demand for Jury Trial. *See* Adversary Case No. 13-00325, Dkt. No. 9. Within a month, Defendant filed an Amended

Answer and Counter Complaint followed by his Rule 26(a)(1) disclosures. *See* Adversary Case No. 13-00325, Dkt. Nos. 14, 20, & 23.

On November 14, 2013, the United States District Court for the District of Maryland entered an Order granting Plaintiff's motion to withdraw the reference. *See* Adversary Case No. 13-00325, Dkt. No. 36. With leave of the court, Plaintiff filed an Amended Complaint (the "2013 Complaint") on January 20, 2015. *See* District Court Case No. 1:13-cv-023355, Dkt. Nos. 48 & 49. In the 2013 Complaint, Plaintiff alleged that Defendant operated an international criminal enterprise to defraud investors, including Plaintiff. Plaintiff alleged that Defendant violated the Federal wire fraud, money laundering, and RICO statutes in furtherance of defrauding Plaintiff. Plaintiff alleged that Defendant misrepresented, orally and in writing, his net worth, his ownership interest in the subject project, his experience in developing multi-billion-dollar real estate projects, and his ability to obtain bank financing. Further, Plaintiff alleged that Defendant used fake escrow arrangements for the purpose of misappropriating funds and presenting falsified and forged emails and documents to Plaintiff. Plaintiff asserted causes of action against Defendant for violation of RICO, common law fraud, unjust enrichment, breach of guarantee agreement, and nondischargeability under 11 U.S.C. §§ 523 (a)(3)(B), (a)(2), (a)(4), and (a)(6).

Defendant did not file a timely response to the 2013 Complaint and Plaintiff again obtained a Clerk's Entry of Default. *See* District Court Case No. 1:13-cv-023355, Dkt. No. 51. However, on Defendant's motion, the District Court set aside the Clerk's Entry of Default and Defendant filed his answer to the 2013 Complaint. *See* District Court Case No. 1:13-cv-023355, Dkt. Nos. 55 & 56.

On October 15, 2015, the bankruptcy court entered an order dismissing the 2012 Bankruptcy without a discharge. *See* Case No. 12-25888, Dkt. No. 87. Accordingly, Plaintiff abandoned his claims for non-dischargeability under 11 U.S.C. § 523 as moot.

A jury trial was scheduled in the 2013 Adversary for February 29, 2016. *See* District Court Case No. 1:13-cv-023355, Dkt. No. 84. On February 25, 2016, Defendant filed a Line Withdrawing his Answer and Counter Complaint as well as his Answer to the 2013 Complaint. *See* District Court Case No. 1:13-cv-023355, Dkt. No. 92. The following day, Plaintiff filed a Motion for Judgment, which the District Court granted on the same day. *See* District Court Case No. 1:13-cv-023355, Dkt. Nos. 94 & 95. In the Order granting Plaintiff's Motion for Judgment (the "Judgment Order"), the District Court held the following:

> Inasmuch as the pleadings referred to set out in the Line [Docs. #9 and #49] extensively detail a series of frauds and other illegal activities carried out by the defendant Brian McCormick over an extended period of time beginning in 2008, the court finds ample evidence, which if presented at trial, would have been more than sufficient to warrant the entry of a judgment against the defendant on the counts One and Two in the [2013] Complaint against him based on violations of the Racketeer Influenced and Corrupt Organizations Act, Section 18 USC 196 et seq. In particular, the Court finds the allegation entirely sufficient to warrant the entry of a judgment against the defendant on an extended series of frauds as well as money laundering in violation of Title 18, Section 1956 as well as violations of Sections 2314 and 2315 of Title 18 relating to the transportation and interstate and foreign commerce or Foreign commerce of money in the value of $5,000 more and receiving such.
>
> Accordingly, the Court orders the entry of a judgment against the defendant on Counts One and Two of the [2013] Complaint in the full amount of the total of the payments made by the plaintiff to the defendant as set forth in the [2013] Complaint in the table in paragraph 99 of the [2013] Complaint. That total is $11,064,437.58.
>
> The Court orders that the Plaintiff submit within thirty (30) days of the entry of this Judgment evidence in affidavit form supporting the costs incurred by him in the prosecution of this case against the defendant, as permitted under 18 USC § 1964(c).
>
> In addition, the Court finds the allegations set forth in the [2013] Complaint are more than sufficient to warrant the granting of relief pursuant to Count Three

4

(common law fraud), Count Four (unjust enrichment) and Count Five (breach of guarantee agreement). The amounts awarded hereinunder Counts Three and Four are $11,064,437.58 on each count and, Count Five, $875,000.

Judgment Order, District Court Case No. 1:13-cv-023355, Dkt. No. 95.

On May 10, 2019, Defendant, acting *pro se*, filed a voluntary Chapter 7 Bankruptcy Petition thereby initiating the underlying bankruptcy case. *See* Case No. 19-16414, Dkt. No. 1. On Schedule F, Defendant listed an unsecured, nonpriority claim held by Plaintiff for $36,393,312.74. *See* Case No. 19-16414, Dkt. No. 1-1, p. 23.

On August 19, 2019, Plaintiff filed the Complaint to Determine Dischargeability of Debt [Dkt. No. 1] (the "Complaint"). Plaintiff asserts that his claim liquidated in the 2013 Adversary is nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6). Defendant filed a timely Answer to the Complaint [Dkt. No. 10], and, with leave of the Court, later filed an Amended Answer [Dkt. No. 35].

After the parties filed their initial pleadings, Plaintiff filed the Motion for Judgment. Plaintiff argues that Defendant was deemed to have admitted all allegations in the complaint based on Defendant's withdrawal of his answer in the 2013 Adversary. Plaintiff further argues that such deemed admission should extend to this adversary proceeding, and, based thereon, Plaintiff is entitled to judgment as a matter of law. Defendant responds that he did not actively participate in the 2013 Adversary and that, in any regard, the Judgment Order is not entitled to issue preclusion because it was not the result of actual litigation.

**II.     DISCUSSION.**

    **A.     Waiver.**

Plaintiff correctly recites that "[a] waiver is an intentional and voluntary relinquishment of a known right." *United States v. Ductan*, 800 F.3d 642, 647 n. 1 (4th Cir. 2015), *quoting United States v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir. 1995). However, the Court is not aware

5

of, and Plaintiff did not cite, any case law holding that the withdrawal of an answer in a prior action equated to an enduring waiver of the defendant's right to contest the factual allegations in the complaint in the prior action. Such a rule would be an end run around the issue preclusion body of law discussed below. Further, nothing before the Court establishes that Defendant intended his withdrawal of his answer in the 2013 Adversary to be a waiver of his right to litigate the underlying factual issues in subsequent litigation. Accordingly, the Court concludes that Plaintiff has failed to establish that Defendant has waived his right to contest any factual issues pertaining to Plaintiff's nondischargeability claims.

### B. The preclusive effect of a prior judgment in a dischargeability proceeding.

The body of law on the preclusive effect of prior judgments in dischargeability proceedings is a complex amalgamation of state and federal law, which the Court will attempt to navigate in a careful and thoughtful manner. The Court begins with the understanding that determinations of nondischargeability are within the exclusive jurisdiction of the bankruptcy court. *Matter of Pigge*, 539 F.2d 369, 371 (4th Cir. 1976); *In re Reinheimer*, 509 B.R. 12, 14 (Bankr. D. Md. 2014) ("The bankruptcy court has exclusive jurisdiction in determining actions brought pursuant to Section 523(a)(2)."). However, prior judgments remain relevant as both claim and issue preclusion may apply in nondischargeability actions to limit the issues for the bankruptcy court to resolve.

Claim preclusion, traditionally termed *res judicata*, provides that "a prior judgment between the same parties and their privies is a final bar to any other suit by or against any of them upon the same cause of action." *Kutzik v. Young*, 730 F.2d 149, 151 (4th Cir. 1984) (*quoting Roberts v. Gates*, 330 A.2d 705, 709 (Md. App. 1975)). Where a creditor previously liquidated its claim, claim preclusion applies in bankruptcy proceedings to conclusively establish

the existence, amount, and validity of the claim. *In re Crespin*, 551 B.R. 886, 897 (Bankr. D.N.M. 2016) ("A state court judgment is entitled to claim preclusion effect to establish the existence and amount of the debt in a dischargeability proceeding."); *In re Wisell*, 494 B.R. 23, 29 (Bankr. E.D.N.Y. 2011) ("[Claim preclusion] is applicable in establishing the existence of the debt."). However, a cause of action under non-bankruptcy law that gives rise to a creditor's claim is a different "cause of action" than the cause of action under 11 U.S.C. § 523 for nondischargeability. *In re Ansari*, 113 F.3d 17, 23 (4th Cir. 1997). As such, a prior judgment will generally not preclude litigation of a claim for nondischargeability. *Id.* Accordingly, the validity of Defendant's $36,393,312.74 debt to Plaintiff was conclusively established in the 2013 Adversary. However, claim preclusion is inapplicable to the Court's determination of the dischargeability of that debt.

Issue preclusion, née collateral estoppel, applies more broadly in dischargeability proceedings. *In re Muhs*, 923 F.3d 377, 385 (4th Cir. 2019) (*citing Grogan v. Garner*, 498 U.S. 279, 284 & n. 11 (1991). The Restatement (Second) of Judgments described the doctrine of issue preclusion as follows: " [w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982); *see also B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148, 135 S. Ct. 1293, 1303, 191 L. Ed. 2d 222 (2015) (incorporating the definition of issue preclusion from § 27); *Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 547, 555 A.2d 502, 504 (1989) (same). Accordingly, to the extent an issue relevant to Plaintiff's claims for non-dischargeability was actually litigated and its determination was

essential to the District Court's judgment, such issue is conclusively established in this proceeding.

### C. Whose Law is it Anyway?

Prelusion doctrine is grounded in the common law and, as such, the principles of claim and issue preclusion vary from jurisdiction to jurisdiction. In *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), the Supreme Court held that the federal common law governs the claim preclusive effect of a federal court judgment. *Id.* at 507. The Supreme Court further held that the body of claim preclusion law to be applied under the federal common law depended on the basis for the prior court's subject matter jurisdiction. *Id.* Where the prior court held federal question jurisdiction under 28 U.S.C. § 1331, the claim preclusive effect of the judgment is "the effect that this Court prescribes" (i.e., claim preclusion as developed within the federal common law). *Id*. at 507. Where the prior court exercised diversity jurisdiction under 28 U.S.C. § 1332, federal common law mandates that the judgment receive the same claim preclusive effect as is "applied by state courts in the State in which the federal diversity court sits." *Id.* at 508. Lastly, the Supreme Court held that "[t]his federal reference to state law will not obtain, of course, in situations in which the state law is incompatible with federal interests." *Id.* at 509. The Supreme Court reasoned that such rule was necessary to prevent "forum-shopping and inequitable administration of the laws." *Id.* at 508-09 (*quoting Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).

Recently, the Fourth Circuit expanded the *Semtek* holding in two important aspects. *See Hately v. Watts*, 917 F.3d 770, 778 (4th Cir. 2019). First, the Fourth circuit applied the holding of *Semtek* to issue preclusion. *Id.* Second, it held that where the prior court exercised supplemental jurisdiction under 28 U.S.C. § 1367 over a state law cause of action, "the federal rule of decision

. . . is to apply state preclusion law, unless the state preclusion law is incompatible with federal interests." *Hately v. Watts*, 917 F.3d 770, 777 (4th Cir. 2019). The Fourth Circuit reasoned that its holding would likewise prevent forum shopping and inequitable administration of the laws. *Id.*

The District Court's initial exercise of subject matter jurisdiction over Plaintiff's causes of action in the 2013 Adversary was not based on federal question, diversity, or supplemental jurisdiction, but bankruptcy jurisdiction under 28 U.S.C. § 1334(b).[1] The Court is aware of only two decisions directly addressing the applicability of *Semtek* to judgments entered pursuant to bankruptcy jurisdiction. *See In re Cass*, 476 B.R. 602 (Bankr. C.D. Cal. 2012), *aff'd*, 2013 WL 1459272 (B.A.P. 9th Cir. Apr. 11, 2013), *aff'd*, 606 F. App'x 318 (9th Cir. 2015) (holding that *Semtek* applied); *Higgins v. NMI Enterprises, Inc*, 2012 WL 5997951 (E.D. La. Nov. 30, 2012) (holding that *Semtek* was inapplicable), *reconsidered in part on other grounds*, 2014 WL 28858 (E.D. La. Jan. 2, 2014). Unfortunately, those courts reached different conclusions. *See id.* In *Cass*, the court noted the similarity between a federal district court exercising diversity jurisdiction over state law causes of action and a bankruptcy court exercising bankruptcy jurisdiction over state law causes of action. The court then held that it saw "no reason why the *Semtek* holding should not extend to cases in which a court's jurisdiction is governed by § 1334." *Cass*, 476 B.R. 602. Conversely, in *Higgins v. NMI Enterprises, Inc*, the court concluded that,

---

[1] In the 2013 Complaint, Plaintiff asserted that the District Court had jurisdiction over the matter under 28 U.S.C. § 1334(b). However, Plaintiff further asserted that many of the claims raised federal issues under 28 U.S.C. § 1331, which sets forth federal question jurisdiction. Because the Court ultimately concludes that the rule set forth in *Semtek* and *Hately* applies when a federal court is exercising bankruptcy jurisdiction, the Court's analysis would remain the same whether the District Court was exercising federal question and supplemental jurisdiction or bankruptcy jurisdiction.

9

"because the prior proceeding . . . was a federal proceeding not based in diversity, *Semtek* is inapplicable. Rather, the Court will apply the general rule that 'the preclusive effect of a federal-court judgment is determined by federal common law.'" *Higgins*, 2012 WL 5997951, at *9.

This Court believes that the *Cass* decision represents the more well-reasoned approach and is consistent with the holdings in *Semtek* and *Hately*. Applying the state law of preclusion to judgments on state law causes of action limits the incentive for forum shopping and ensures equitable administration of laws. The intuitive appeal of this approach must have been apparent to the *Higgins* court when it buttressed its holding by noting that many of the causes of action in the prior case "specifically alleged violations of federal law, and as such, would have supported federal question jurisdiction." *Higgins*, 2012 WL 5997951, at *9. While the imposition of the automatic stay under 11 U.S.C § 362(a) curtails litigants' ability to forum shop after the filing of a bankruptcy case, it does not eliminate it entirely. To break from *Semtek* and *Hately* in the bankruptcy context could complicate motions for relief from the automatic stay and create perverse incentives for filing voluntary or involuntary bankruptcy petitions. Further, ensuring the equitable administration of justice weighs in favor of giving equal preclusive effect to judgments on state law causes of action, without regard to whether the prior court was a state court, a federal court exercising diversity jurisdiction, or a bankruptcy court exercising bankruptcy jurisdiction. For these reasons, the Court concludes that, where a bankruptcy court renders judgment on a state law cause of action, the preclusive effect of that judgment is determined under the federal common law, which, in turn, "appl[ies] state preclusion law, unless the state preclusion law is incompatible with federal interests." *Hately*, 917 F.3d at 777.

Here, the District Court entered judgment against Defendant on five causes of action: two counts for violation of RICO, common law fraud, unjust enrichment, and breach of guarantee

agreement. The RICO causes of action are federal causes of action and the preclusive effect of the Judgment Order with respect to those counts is governed by federal principles of issue preclusion. However, the counts for common law fraud, unjust enrichment, and breach of guarantee agreement are Maryland state law causes of action.[2] Accordingly, the preclusive effect of the Judgment Order as to those counts is governed by Maryland principles of issue preclusion to the extent they are not incompatible with federal interests.

### D. Elements of Issue Preclusion.

Both federal and Maryland courts have adopted the definition of issue preclusion set forth in the Restatement (Second) of Judgments § 27. *See B & B Hardware, Inc.*, 575 U.S. at 148 (incorporating the definition of issue preclusion from § 27); *Murray Int'l Freight Corp.*, 315 Md. at 547 (same). Under that definition, "before a party will be estopped from relitigating an issue, the following elements must be present: (1) the issue sought to be precluded was the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a valid and final judgment; and (4) the determination was essential to the prior judgment." *Nestorio v. Assocs. Commercial Corp.*, 250 B.R. 50, 55 (D. Md. 2000), *aff'd sub nom. In re Nestorio*, 5 F. App'x 283 (4th Cir. 2001) (*citing Combs v. Richardson*, 838 F.2d 112, 115 (4th Cir. 1988)). Here, some factual issues raised in the 2013 Adversary are the same as those involved in this nondischargeability action. Further, the Judgment Order is a valid and final judgment. Whether any of those issues were actually litigated in the 2013 Adversary and, if so, whether their determination was essential to the Judgment Order require further examination.

---

[2] The 2013 Complaint does not specify whether the counts for common law fraud, unjust enrichment, and breach of guarantee agreement were made under state or federal common law. However, a cause of action for fraud, unjust enrichment, or breach of contract under the federal common law is only available in a limited set of circumstance not relevant here.

11

### 1. Actually Litigated.

The Judgment Order falls in a grey area. Plaintiff obtained the Judgment Order by motion, rather than trial, and without the presentation of evidence to the District Court. Conversely, Plaintiff obtained the Judgment Order after prolonged involvement by Defendant and on the eve of a scheduled trial. As such, the Court must delve deeper to determine the meaning of "actually litigated" under federal and Maryland law.

#### a. The traditional rule.

The traditional rule, found in comment e to Restatement (Second) of Judgments § 27 is:

> In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action. The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention.

Restatement (Second) of Judgments § 27, comment. e (1982). Both federal courts and Maryland state courts have adopted comment e. *See Arizona v. California*, 530 U.S. 392, 414, 120 S. Ct. 2304, 2319, 147 L. Ed. 2d 374, *supplemented*, 531 U.S. 1, 121 S. Ct. 292, 148 L. Ed. 2d 1 (2000); *In re Raynor*, 922 F.2d 1146, 1150 (4th Cir. 1991) (citing comment e when holding that "a default judgment cannot support issue preclusion");[3] *United States v. Modanlo*, 493 B.R. 469, 277 (D. Md. 2013) ("Because the adversary action resulted in a default judgment, it has no preclusive effect."); *United Book Press, Inc. v. Maryland Composition Co.,* 141 Md. App. 460, 477, 786 A.2d 1, 11 (2001) (quoting comment e with approval).

---

[3] In *Raynor*, the Fourth Circuit was determining the preclusive effect of a North Carolina state court judgment. However, the decision predates *Semtek* and the Fourth Circuit cited only federal court sources and the Restatement (Second) Judgments in its discussion of the issue preclusive effect of the prior default judgment. As such, the Court interprets *Raynor* as instructive of the Fourth Circuit's application of the federal common law of issue preclusion.

b.  Federal standard for actual litigation.

With the diversity of scenarios that could give rise to a "default" judgment, some federal courts have been reluctant to apply such a bright line rule.[4] There exists two divergent lines of federal case law on application of the actually litigated requirement. *In re Wien*, 155 B.R. 479, 485 (Bankr. N.D. Ill. 1993), *aff'd sub nom. Wienco, Inc. v. Scene Three, Inc.*, 29 F.3d 329 (7th Cir. 1994). The first line of cases strictly applies the rule set forth in comment e and refuses to apply issue preclusion "to default judgments, consent judgments, and uncontested summary judgments in all but a few cases." *Id.* (citations omitted). A second line of cases applies a less narrow interpretation in an effort to "alleviate the harshness of refusing to give [issue preclusive] effect to all default judgments." *Id.* These courts hold that actual litigation occurred where "the issue had been raised by the pleadings, submitted to a jury or finder of fact, and the matter is determined after the party has notice and an opportunity to be heard. An adversarial hearing is not required in every case." *Id.*

In *Nestorio v. Assocs. Commercial Corp.*, 250 B.R. 50, 55 (D. Md. 2000), the defendant failed to timely file a responsive pleading and the plaintiff obtained a clerk's default in the prior action. *Id.* The defendant then moved to set aside the default, which the prior court granted on the condition that the defendant post a bond of $100,000.00. *Id.* The defendant failed to post the bond and the default stood. *Id.* The case was then referred to a magistrate judge for a damages hearing. *Id.* The plaintiff presented evidence at the damages hearing; however, the defendant did not appear. *Id.* The magistrate judge issued a report and recommendation on damages, which the

---

[4] As the Court's analysis focuses on the conditions that gave rise to the entry of the Judgment Order, whether the Judgment Order is properly termed a "default judgment" is of little regard. However, the Court notes that Plaintiff's arguments regarding the issue preclusive effect of the Judgment Order suggest that the Judgment Order is akin to a default judgment.

District Court adopted without objection from the defendant. *Id.* In determining the applicability of issue preclusion to the prior judgment, Judge Chasanow applied the less narrow interpretation of "actually litigated" in holding that:

> [T]he "actually litigated" requirement is met, even if there is no adversarial hearing, when (1) a defendant files an answer to the complaint or otherwise appears in the action, (2) the issues are submitted to a jury or finder of fact, (3) the issues are determined after the party has notice and an opportunity to be heard, and (4) the defendant had proper incentive to litigate the matter in the prior hearing and could reasonably foresee litigation on the same issue.

*Id*. at 56. Considering these factors, Judge Chasanow held that the relevant issues had been actually litigated and the judgment of the prior court should receive issue preclusive effect.

        c.        <u>Maryland standard for actual litigation.</u>

There is substantial support for the position that Maryland law continues to apply the traditional rule that uncontested or default judgments do not satisfy the requirement for actual litigation. *See John Crane, Inc. v. Puller*, 169 Md. App. 1, 36, 899 A.2d 879, 899 (2006) (reciting Restatement (Second) of Judgments § 27, comment e).[5] While the Court is not aware of any decision by a Maryland appellate court rejecting the traditional rule, the enduring nature of the traditional rule in Maryland law, at least with respect to default judgments, has been called into question. *See Lowery v. Minh-Vu Hoang*, 240 Md. App. 240, 250, 203 A.3d 16, 22, n. 15 ("[A]lthough it is apparently an unresolved issue in Maryland law and throughout the United

---

[5] *See also United Book Press, Inc. v. Maryland Composition Co.*, 141 Md. App. 460, 477, 786 A.2d 1, 11 (2001) ("Maryland, in addition to other jurisdictions, has recognized the principle in comment (e)."); *Welsh v. Gerber Prod., Inc.*, 315 Md. 510, 522, 555 A.2d 486, 492 (1989) (applying comment e in concluding that a consent judgment is entitled to issue preclusive effect only where the issue was actually litigated or the parties intended the consent judgment to have preclusive effect); *Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 550, 555 A.2d 502, 505 (1989) (directing readers to "comment e for discussion of when issues are not actually litigated.").

14

States, it appears that the most common view is that a default judgment should not be considered to have been 'finally litigated' for purposes of [issue preclusion]." (*citing John Crane, Inc. v. Puller*, 169 Md. App. 1, 36, 899 A.2d 879 (2006))), *cert. granted*, 464 Md. 7, 210 A.3d 182 (2019).[6] Irrespective of this ostensible controversy, in *John Crane, Inc. v. Puller*, 169 Md. App. 1, 34, 899 A.2d 879, 898 (2006), the Maryland Court of Special Appeals provided a thorough explanation of the actually litigated requirement under Maryland law. In distinguishing between the legal and factual ramifications of a default judgment, that court held:

> The distinction which Crane stubbornly refuses to recognize is that even a final and binding legal resolution of a case does not necessarily entail any actual litigation of factual issues. Crane continues to conflate the two very different phenomena. In the context, however, of collateral estoppel law and when the issue sought to be precluded is one of fact, ***the actual litigation of an issue of fact refers not to legal actions or rulings, which may have sweeping legal consequences, but only to the deliberative process of fact-finding by a fact-finding jury or judge.*** The fact finder receives and considers evidence on controverted issues of fact, assesses the credibility of the sources of the evidence, weighs the evidence, and, explicitly or implicitly makes findings of fact. This is the core activity from which issue preclusion proceeds. It is not coterminous with the larger process of resolving a legal action. It is merely one aspect of one modality that sometimes (but not always) enters into that larger process.
>
> There are a number of legal actions, procedures, and rulings that may have sweeping claim-preclusive consequences but that do not remotely entail any actual litigation of factual issues. . . .By a precise parity of reasoning, a civil plaintiff may dismiss with prejudice a cause of action or the State may nol pros a criminal charge even when the supporting evidence for the action or the charge might be overwhelmingly abundant. The legally binding consequences of the dismissal, when applicable, do not necessarily correlate in any way to evidentiary inadequacy on underlying factual issues. The thing that all of these binding legal actions—a nol pros, a confessed judgment, a consent judgment, a default judgment, a voluntary dismissal with prejudice—have in common is that they are not necessarily dependent on the actual litigation of any factual issue. The legal action, therefore, does not necessarily imply anything with respect to arguably subsumed factual issues.

---

[6] *See also Jordan v. Moore*, 2010 WL 997065, at *5 (D. Md. Mar. 16, 2010) ("It is not entirely clear, however, whether Maryland has adopted the position that a default judgment . . . can be used for the purposes of collateral estoppel."), *aff'd*, 407 F. App'x 655 (4th Cir. 2011).

*Puller*, 169 Md. App. at 35–36 (emphasis added).

Plaintiff argues that the Judgment Order should be given issue preclusive effect based on Defendant's prolonged participation in the 2013 Adversary. To hold otherwise, Plaintiff argues, would be unfairly granting Defendant a 'second bite of the apple.' Plaintiff cites *In re Reecher*, 514 B.R. 136 (Bankr. D. Md. 2014) in support of this argument, wherein Judge David Rice held "[w]ith respect to default judgments entered against defendants . . . who . . . actively participated in earlier stages of the prior litigation, this court has held that collateral estoppel applies." *Id.* at 153. However, as noted in *Puller*, the focus of the actual litigation requirement is not the defendant's level of participation in the prior litigation but whether the judgment was the result of a "deliberative process of fact-finding by a fact-finding jury or judge." *Puller*, 169 Md. App. at 35. In *In re Durant*, 586 B.R. 577 (Bankr. D. Md. 2018), Judge Michelle M. Harner explained that:

> [I]n the absence of a defect in notice or other due process concerns, a defendant's choice to not participate in litigation from the start versus its decision to stop participating after the filing of an answer or a notice of appearance by counsel merits little distinction. In both instances, the defendant knows of the litigation and allows the plaintiff and the legal process to proceed in her absence.

*Id.* at n. 7.

Plaintiff argues that Defendant's default by way of his withdrawal of his answer in the 2013 Adversary was an admission of each of the allegations in the 2013 Complaint. It is true that "Maryland courts have held that a default judgment 'constitutes an admission by the defaulting party of its liability for the causes of action set out in the complaint.'" *In re McClendon*, 415 B.R. 170, 182 (Bankr. D. Md. 2009) (*quoting Pac. Mortgage & Inv. Group, Ltd. v. Horn*, 100

Md. App. 311, 332, 641 A.2d 913, 923 (1994)).[7] However, the seminal Maryland cases out of which that statement of law arises address the effect of a default within the action in which the default occurred, not on subsequent litigation.[8] It is also true that some opinions issued by this Court acknowledge that, under Maryland law, a default is an admission of liability within its discussion of issue preclusion. However, in each of those cases the Court's application of issue preclusion was based on the prior court's deliberative consideration of evidence and findings of fact, not merely the entry of default.[9]

---

[7] *See also In re Reecher*, 514 B.R. 136, 152 (Bankr. D. Md. 2014) (*quoting Hayden v. Bullinger*, 350 Md. 452, 472, 713 A.2d 962 (1998) ("In Maryland a default judgment is considered more akin to an admission of liability than to a punitive sanction."); *In re Durant*, 586 B.R. 577, 586 (Bankr. D. Md. 2018) (*citing Reecher*) ("The treatment of a default judgment as an "admission of liability" under Maryland law is particularly relevant.").

[8] *See Hopkins v. Easton National Bank of Maryland*, 171 Md. 130, 187 A. 874 (1936) ("On the failure of a defendant to appear, the party is in contempt, and the allegations of the bill may be taken as true against him." (*citing Rust v. Lynch*, 54 Md. 636 (1880)); *Gotham Hotels, Ltd. v. Owl Club, Inc. of Baltimore*, 26 Md. App. 158, 337 A.2d 117 (1975) (holding that the defendant's failure "to plead constituted an admission by it of liability for the cause of action set forth in the declaration.") *Pacific Mortgage & Investment Group, Ltd. v. Horn*, 100 Md. App. 311, 641 A.2d 913 (1994). ("A judgment by default constitutes an admission by the defaulting party of its liability for the causes of action set out in the complaint." (*citing Gotham Hotels*, 26 Md. App. at 173); *Curry v. Hillcrest Clinic, Inc.,* 337 Md. 412, 653 A.2d 934 (1995) ("In Maryland a default judgment is considered more akin to an admission of liability than to a punitive sanction."); *Porter Hayden Co. v. Bullinger*, 350 Md. 452, 713 A.2d 962 (1998). "Although no determination as to B&W's liability was made by a judge or a jury, B&W's admission of liability, resulting from the entry of default judgment, is sufficient to establish it as a joint tort-feasor under the Act.").

[9] *See In re McCoskey*, 2006 WL 5217793, at *2 (Bankr. D. Md. Feb. 19, 2006) (the prior court "heard *ex parte* proof of damages"); *In re McClendon*, 415 B.R. 170, 178 (Bankr. D. Md. 2009) (the prior court "conducted a full evidentiary hearing"); *In re Reecher*, 514 B.R. 136, 146 (Bankr. D. Md. 2014) (the prior court conducted a full evidentiary hearing on damages); *In re Durant*, 586 B.R. 577, 581 (Bankr. D. Md. 2018) ("The State Court then held an evidentiary hearing on damages relating to the default judgment."); *In re Reed*, 2013 WL 6497926 (Bankr. D. Md. Dec. 11, 2013) (prior court granted summary judgment), *aff'd sub nom. Reed v. Reed*, 2014 WL 4926187 (D. Md. Sept. 30, 2014). *See also Jordan v. Moore*, 2010 WL 997065, n. 6

17

Based on the foregoing, it is clear that Maryland law of issue preclusion requires actual litigation even if the prior judgment was obtained by default or otherwise without the opponent's participation. This Court has often applied the relaxed interpretation of actual litigation found in *Nestorio* when determining the issue preclusive effect of Maryland state court judgments. *See e.g., In re Reed*, 2013 WL 6497926, at *7 (Bankr. D. Md. Dec. 11, 2013), *aff'd sub nom. Reed v. Reed*, 2014 WL 4926187 (D. Md. Sept. 30, 2014). While the Court is not aware of any Maryland appellate court decisions explicitly adopting this position, the Court concludes that it is consistent with Maryland's application of the actual litigation requirement as well as the *Puller* holding. *Puller*, 169 Md. App. at 35. The Court sees no reason to break with this tradition.

### E. The Judgment Order is not entitled to issue preclusion in this nondischargeability proceeding.

The evidence before the Court does not suggest that the Judgment Order was the result of actual litigation. Plaintiff obtained the Judgment Order by motion, the same day Plaintiff filed the motion, and without a hearing. It does not appear, and Plaintiff does not assert, that Plaintiff submitted any documents or other evidence in connection with Plaintiff's Motion for Judgment. Further, Plaintiff does not even argue that the District Court considered evidence and made deliberate findings of fact. In fact, the Judgement Order, which was drafted by Plaintiff, explicitly states that the judgment was based on the sufficiency of Plaintiff's allegations in the 2013 Complaint, not on findings of substantive fact.[10] *See* Judgment Order, Dkt. No. 1-5.

---

(D. Md. Mar. 16, 2010), *aff'd*, 407 F. App'x 655 (4th Cir. 2011). ("Thus, to the extent that the Bankruptcy Court relied on *McCoskey* for the proposition that a default judgment supports issue preclusion, its conclusion is not correct.")

[10] The Judgment Order contains the following somewhat ambiguous statement:
> Inasmuch as the pleadings referred to set out in the Line [Docs. #9 and #49] extensively detail a series of frauds and other illegal activities carried out by the defendant Brian McCormick over an extended period of time beginning in 2008,

18

Accordingly, no substantive issues were presented to the District Court and the District Court made no deliberate determinations on substantive issues. The District Court entered the Judgment Order on the basis of the sufficiency of the allegations in the 2013 Complaint. No issues relevant to this adversary proceeding were actually litigated in the 2013 Adversary under either the federal standard set forth in *Nestorio* or the Maryland standard expounded in *Puller*.

Plaintiff contrasts the instant case with this Court's decision in *In re Yen Ming Chu*, 2019 WL 4130869 (Bankr. D. Md. Aug. 29, 2019), wherein the Court found that a prior Maryland state court default judgment was not preclusive on the issue of fraud under 11 U.S.C. § 523(a)(2)(A). In *Chu*, the plaintiff asserted claims for breach of contract and fraud against the defendant in the prior state court action. The prior court declared the defendant in default as a discovery sanction and set a hearing on damages. Following the damages hearing, the prior court issued judgment in favor of the plaintiff but did not identify on which of the plaintiff's claims it was rendering judgment. Nonetheless, the prior court awarded the plaintiff compensatory damages, and denied the plaintiff's request for punitive damages and attorney fees. Finding that the prior court's judgment was inconclusive on whether the issue of fraud had been actually litigated and decided in the prior action, this Court followed the direction of the Maryland Court of Special Appeal in *Puller* to "determine[e] whether an issue has been actually litigated [by]

---

the court ***finds ample evidence***, which if presented at trial, would have been more than sufficient to warrant the entry of a judgment against the defendant . . .

Judgment Order, Dkt. No. 1-5. In context, it is clear that the District Court's finding of "ample evidence" was actually a finding that the allegations in the [2013] Complaint, if proven at trial, would support entry of judgment in favor of Plaintiff. In fact, Plaintiff argues "[t]he District Court found and determined that the facts set forth in the DC [2013] Complaint provided 'ample evidence, which if presented at trial, would have been more than sufficient to warrant the entry of a judgment against the defendant.'" Memorandum of Law, Dkt. No. 18, p. 16. As such, Plaintiff implicitly acknowledges that the District Court's finding of "ample evidence" was entirely based on the allegations set forth in the 2013 Complaint.

19

looking beyond the judgment to examine the pleadings and evidence presented in the prior case." *Puller*, 169 Md. App. at 36–37 (*quoting United Book*, 141 Md. App. at 479). Upon reviewing the record, this Court found that the prior court had rejected the plaintiff's request to present evidence on the issue of fraud and had stated on the record that it was awarding judgment on the breach of contract claim. Plaintiff is correct that the facts in *Chu* are substantially different than those in this case. However, one similarity between both cases is the absence of any presentation or consideration of evidence in the prior action. Accordingly, here, as in *Chu*, the requirement of actual litigation is not met.

### III.    OPPORTUNITY TO AMEND THE COMPLAINT.

Plaintiff drafted the Complaint with the assumption that all allegations in the 2013 Complaint were deemed admitted for the purposes of this non-dischargeability proceeding. As such, the Court has determined that it is appropriate to afford Plaintiff an opportunity to amend his Complaint filed herein.

### IV.    CONCLUSION.

Based on the foregoing, the Court concludes that the Motion for Judgment should be denied. The Court will enter an order consistent with this Memorandum Opinion.

**End of Order**

cc: All parties.